IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| CATHY BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-4277-CV-C-NKL |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Cathy Bailey's ("Bailey") Motion for Summary Judgment [Doc. # 13]. Bailey seeks judicial review of the Commissioner's denial of her requests for disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*; 42 U.S.C. §§ 1381, *et seq.* The Administrative Law Judge ("ALJ") found that Bailey was not entitled to benefits and such determination became a final decision of the Commissioner upon the Appeals Council's denial of Bailey's request for review. Judicial review is appropriate in that Bailey has exhausted her administrative remedies and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). Because the ALJ's decision was not supported by substantial evidence in the record as a whole, the ALJ's decision will be reversed and benefits will be granted.

Bailey alleged disability due to severe back pain and mental health impairments resulting from depression and panic disorder associated with agoraphobia. In his opinion,

1

the ALJ discounted the mental health assessments completed by Bailey's treating physicians and he found that Bailey's claims of disabling back pain were not credible.

## I. Competing Medical Opinions

### A. Bailey's Treating Physicians

#### 1. Dr. Gowda

Dr. Bhask Gowda ("Dr. Gowda"), a physician who treated Bailey for mental health impairments, submitted a Medical Source Statement-Mental ("MSSM") in November 2003 wherein he determined that Bailey was markedly limited in her ability to:

    (1)    carry out detailed instructions;
    (2)    sustain an ordinary routine without supervision;
    (3)    work in coordination with or proximity to others without being distracted by them;
    (4)    make simple work-related decisions;
    (5)    maintain a normal workday and work week without interruptions from psychologically based symptoms;
    (6)    accept instructions and respond appropriately to criticism from supervisors;
    (7)    respond appropriately to changes in the work setting.

(Tr. 351-353.)

Prior to his November 2003 submission of the MSSM, Dr. Gowda diagnosed Bailey as follows:

    Axis I:      BAD with psychotic features, panic disorder with agoraphobia
    Axis III:    Migraines
    Axis IV:    Illegible
    Axis V:     GAF 35

(Tr. 346.) Dr. Gowda reached these conclusions in September 2003.

2

### *2. Dr. Armstrong*

Dr. Lane Armstrong ("Dr. Armstrong"), another physician who treated Bailey, also submitted an MSSM in March 2004 that stated Bailey was markedly limited in her ability to:

(1) work in coordination with or proximity to others without being distracted by them;
(2) maintain a normal workday and work week without interruptions from psychologically based symptoms;
(3) interact appropriately with the general public;
(4) respond to changes in the work setting; and
(5) travel in unfamiliar places or use public transportation.

(Tr. 354-357.)

In September 2003--about six months prior to the submission of his MSSM–Dr. Armstrong formulated a diagnosis of Bailey as follows:

| | |
|---|---|
| Axis I: | Major depression, recurrent panic disorder with agoraphobia |
| Axis II: | Deferred |
| Axis III: | Hysterectomy |
| Axis IV: | Severe financial |
| Axis V: | GAF 50 |

(Tr. 331.) A few days later, Dr. Armstrong changed Bailey's Axis I diagnosis to bipolar disorder. (Tr. 330.) In May 2002, Dr. Armstrong had assessed Bailey's GAF at 55, but this diagnosis did not include the major depression component that was diagnosed in September 2003. (Tr. 336.)

### B. Consulting Physicians

At the request of the Commissioner, two additional doctors weighed in regarding Bailey's mental health impairments. Neither doctor submitted a MSSM but they both

3

provided diagnoses of Bailey.

In August 2002, Dr. Lester Bland ("Dr. Bland") reviewed Bailey's medical records, but he did not meet with her in person. Dr. Bland submitted a Mental Residual Functional Capacity Assessment ("Mental RFC") that determined Bailey was markedly limited in her ability to interact appropriately with the general public[1] and moderately limited in her ability to (1) understand and remember detailed instructions, and (2) carry out detailed instructions. (Tr. 267-70.)

Also in August 2002, Dr. Kenneth MacDonald ("Dr. MacDonald") consulted with Bailey, but they met only one time. Dr. MacDonald submitted a letter stating that Bailey had a GAF of 60. (Tr. 264-66.)

### C. Vocational Expert

During the hearing, the vocational expert testified that an individual with the physical limitations described by the ALJ, which did not account for Bailey's back pain, who had a GAF of 35 or 50 could not perform unskilled work. (Tr. 464-66.) However, the vocational expert testified that a person who had a GAF of 60 combined with the physical limitations propounded by the ALJ could perform unskilled work. Because the ALJ discounted the GAF scores assessed by Drs. Gowda and Armstrong in favor of the GAF score of 60 assessed by Dr. MacDonald, he determined Bailey could perform unskilled work and denied her benefits.

---

[1] Dr. Armstrong also determined that Bailey was markedly limited in her ability to interact appropriately with the general public. (Tr. 354-57.)

4

## D. The ALJ's Decision

Absent a good reason, an ALJ is required to give substantial weight to the conclusion of a treating physician. The ALJ clearly did not comply with this requirement. Furthermore, even without that requirement, the ALJ's decision to discount Bailey's treating physicians and accept as true the referring physicians' opinions, is unsupported by the record. First, the opinions of Drs. Gowda and Armstrong were submitted over one year later than the opinions expressed by Drs. Bland and MacDonald. Thus, the later opinions were submitted in closer proximity to the hearing conducted in November 2003, thereby suggesting that the later findings better represented her condition at that time.

Second, the ALJ discounted the MSSM forms submitted by Drs. Gowda and Armstrong because their conclusions were not fully explained in the form. However, the MSSM forms–which are developed by the Social Security Administration--are not amenable to writing out explanations of the diagnoses contained therein. The forms do not provide room for opining about a claimant's condition or reciting their entire medical history; instead, they are merely checklists for a physician to fill out. Thus, this flaw is inherent to the form and not the result of the physicians' alleged lack of diligence.[2]

Additionally, the conclusions reached in the MSSM are consistent with the doctors' treatment notes and medical records. Both treating physicians assessed Bailey as

---

[2] Notably, the Mental RFC form submitted by Dr. Bland is also in checklist form and it does not contain explanations for his findings. (Tr. 267-70.) Although the documents contains some handwritten notes, those notes are merely repetitive of his findings reflected in the checklist and they do not provide an independent rationale for his conclusions.

having low GAF scores, which would certainly suggest marked limitations in the categories identified by the doctors. Moreover, the doctors' MSSM forms are consistent with each other in the sense that they both found Bailey had marked limitations in three of the same categories.

Finally, the ALJ discounted the MSSM forms submitted by Drs. Gowda and Armstrong because the doctors did not respond to his interrogatories that inquired about the bases for their findings. The Commissioner points to no authority suggesting that an ALJ may discount the findings of a treating physician merely because the doctor does not respond to the ALJ's interrogatories. Furthermore, there is no evidence that the ALJ propounded interrogatories to either Dr. Bland or Dr. MacDonald to inquire about their conclusions; thus, none of the doctors involved in this case submitted responses to written interrogatories and this factor weighs neither for nor against any of the doctors' opinions.

Because the ALJ's decision to discount the findings of Bailey's treating doctors is not supported by substantial evidence in the record, the Court will reverse the ALJ's findings and award benefits. Combining the MSSM and the substantially low GAF scores propounded by Bailey's treating physicians with her ongoing need for mental health treatment and substantial medication, which are undisputed and therefore not recounted herein, the record does not support the ALJ's findings. Accordingly, the Court will reverse the ALJ's decision and grant benefits.

## II.    Bailey's Credibility

The ALJ also discounted Bailey's credibility. Again, the Court finds this

determination is not supported by substantial evidence in the record.

### A. Bailey's Complaints of Back Pain

Regarding her complaints about back pain, it is undisputed that Bailey had already undergone one back surgery prior to the hearing in November 2003 and that this was the suspected cause of her back pain. However, recently submitted evidence also demonstrates that Bailey required a second back surgery for a herniated disc. Thus, there is no dispute that Bailey suffers from diagnosed and objective back problems that have required invasive surgery.

It is also undisputed that Bailey's back problems cause her some pain[3] and the record reflects that she also received epidural steroid injections into her lower back to mitigate the pain. In fact, Bailey received injections in October 2003 (Tr. 434-35), February 2004 (Tr. 421-23), and June 2004 (Tr. 418-20). Although pain can be difficult to objectively demonstrate, the record reflects that Bailey's purported back pain was credible enough that her doctors ordered pain-relieving epidural injections for her on a repeated basis and performed surgery, thereby further supporting her claim that she was suffering from severe back pain. Accordingly, the ALJ's decision to discount Bailey's complaints of back pain is not supported by substantial evidence in the record.

### B. Bailey's Daily Activities

The ALJ also discounted Bailey's complaints of back pain and mental health

---

[3]In her brief, the Commissioner notes, "It is undisputed that [Bailey]'s back condition causes her pain." *See* Comm. Opposition [Doc. # 13] at p. 9.

impairments because of her daily activities of caring for children, cooking, cleaning, and driving. The ALJ's reliance on Bailey's daily activities ignores her testimony at the hearing. For example, Bailey testified that her fiancee provided substantial help in caring for the children, including taking the children to the bus stop and picking them up in the afternoon. (Tr. 458.) She also testified that he did most of the cooking and that when she cooks, it is in the form of simple microwave meals. (Tr. 458-59.) Regarding her cleaning habits, Bailey primarily testified about doing laundry and she stated that the children provide substantial assistance with the laundry, including folding the clothes and putting them away. (Tr. 459.) The ALJ also noted Bailey's use of a computer to undermine her credibility, but Bailey testified that she spent only an hour or more on the computer daily, which is not a significant amount of time given that she is at home all day. (Tr. 459.)

Regarding her driving and activities outside the home, Bailey's testimony demonstrates that they are minimal. She testified that she went to the grocery store once or twice a week, but she did not indicate that she ever left home for any other purpose. (Tr. 459.) For example, Bailey is not involved with any organization or club that regularly meets nor does she have a hobby that requires activity outside of the home. (Tr. 459-60.) Thus, her activity outside the home is very limited and it does not undermine her claims of disabling pain and mental health impairments.

Accordingly, the ALJ's decision to discount Bailey's complaints of back pain and mental health impairments because of her daily activities is not supported by substantial evidence in the record.

8

## III. Conclusion

Because the ALJ's decision was not supported by substantial evidence in the record as a whole, it is hereby

ORDERED that Bailey's Motion for Summary Judgment [Doc. # 13] is GRANTED. The decision of the ALJ is REVERSED, and the Commissioner is ordered to pay benefits.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Court

Dated:   September 29, 2005
Kansas City, Missouri

9